UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTIN CARIDEO, et al.,

        Plaintiffs,

    v.

DELL, INC.,

        Defendant.

CASE NO. C06-1772JLR

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION

This matter comes before the court on Plaintiffs' Federal Rule of Civil Procedure 60(b) motion for relief from the court's order compelling arbitration (Dkt. # 43). Having heard oral argument and considered all materials cited or filed, the court DENIES the motion.

**I. BACKGROUND**

The parties are familiar with the procedural posture of this case. Plaintiffs Kristin Carideo and Catherine Candler purchased allegedly defective laptop computers from Dell at prices ranging from $1,300 to $1,700 dollars. As putative class representatives, they alleged violations of Washington's Consumer Protection Act ("CPA"), RCW § 198.86, breach of express and implied warranties, fraudulent concealment, and unjust enrichment.

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 1

Defendant Dell, Inc. ("Dell") moved to compel arbitration based on a dispute resolution clause in the "Terms and Conditions of Sale" that it presents to customers at the time of purchase, and again with the shipment of the computer. Pape Decl. ¶¶ 5, 6, Ex. A ("Agreement") (Dkt. # 15).[1] The dispute resolution clause provides that any claims related to the Agreement shall be resolved by binding arbitration administered by the National Arbitration Forum ("NAF"). The Agreement also requires that the customer waive her ability to pursue a class action against Dell. *Id.* ¶ 13. The Agreement selects the substantive law of Texas to govern contract disputes. *Id.* ¶ 2.

In June 2007, the enforceability of the Agreement was thus presented to the court through a choice-of-law question: whether the arbitration agreement's class-action waiver violated Washington's fundamental public policy such that the parties' express choice of Texas law could not be honored. Order at 7 (June 18, 2007) (Dkt. # 42). The court noted that "[a]bsent a legislative enactment or declaration from the highest court that class action waivers of the sort presented here violate public policy of the State of Washington, the court declines to invalidate the Agreement's choice of law provision." *Id.* The court therefore applied Texas law, stayed this action, and compelled arbitration. *Id.*

Since June 2007, there have been several developments that lead the court to revisit its analysis. First, in *Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007), the Washington Supreme Court held that the class-action waiver contained in Cingular's consumer arbitration agreement violated the public policy embodied in the state's Consumer Protection Act ("CPA") and improperly exculpated Cingular from wrongful conduct. Second, in *Erwin v. Cotter Health Ctrs.*, No. 78928-2, 2007 WL 2729036, at *8

---

[1] Dell provided two versions of the Agreement, Pape Decl., Exs. A, B, presumably to reflect the standard contracts that were in effect on the dates of Plaintiffs' respective purchases. Unless otherwise noted, the court refers to the Agreement as it appears in Exhibit A to Mary Pape's Declaration.

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 2

(Wash. Sept. 20, 2007), the Washington Supreme Court clarified that it would apply section 187 of the *Restatement (Second) Conflict of Laws* (1971) ("*Restatement*") to conflict of laws problems in which the parties have made an express contractual choice of law. Third, a number of our sister courts have weighed in on the issue of class-action waivers in arbitration agreements similar to the one presented here.

In September 2007, the court heard oral argument on Plaintiffs' Rule 60(b) motion. Plaintiffs argued that *Scott v. Cingular Wireless* stands for the proposition that a class-action waiver of the type found in the Dell Agreement is unconscionable and, therefore, unenforceable as a violation of Washington's fundamental public policy. The court disagrees. *Scott* requires the court to examine the enforceability of a class-action waiver given the totality of the circumstances. Doing so confirms that the Agreement is enforceable because it is neither substantively nor procedurally unconscionable under Washington law.

## II. ANALYSIS

### A.    Legal Standard

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). To that end, the FAA divests the district court of its discretion and requires it to resolve any doubts in favor of compelling arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). On review of a motion to compel, the court's role is limited to a determination of (1) whether the parties entered into a valid agreement to arbitrate, and if so, (2) whether the present claims fall within the

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 3

scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Notwithstanding the federal law's presumption in favor of arbitrability, the court may consider generally applicable state law contract defenses (e.g., fraud, unconscionability, duress) in determining whether the arbitration provision is valid. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.2002). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The parties do not dispute that the present dispute falls within the scope of the agreement. The court therefore directs its attention to the validity of the arbitration clause.

**B.    Applicable State Law**

1.    *Reviewing the Parties' Express Choice of Law*

Plaintiffs argue that the Agreement's choice-of-law clause is invalid because applying Texas law would violate Washington's fundamental public policy against class-action waivers in arbitration agreements. Sitting in diversity, the court applies the choice-of-law rules of the forum state. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). "When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Erwin*, 2007 WL 2729036, at *7 (citations removed). A real conflict exists when the result would differ under the law of the two states. *Id.* Where, as here, the parties have made an express contractual choice of law, Washington applies *Restatement* section 187 to resolve a conflict of laws. *Id.* at *8. In relevant part, section 187 provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 4

> (a) the chosen state has *no substantial relationship to the parties or the transaction* and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be *contrary to a fundamental policy of a state which has a materially greater interest than the chosen state* in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(emphases added).

Choosing the applicable state law is, therefore, a two-part inquiry: (1) whether there is an actual conflict of laws; and (2) whether the parties' choice of Texas law is effective. The first question asks whether there is a meaningful difference between Washington and Texas law. The second asks whether that difference requires the parties' express choice of law to be invalidated.

As to the first question, an actual conflict of laws exists between Washington and Texas law. In *Scott v. Cingular Wireless*, the Washington Supreme Court adopted a case-specific approach to assessing the enforceability of class-action waivers in arbitration agreements, the application of which "will turn on the facts of the particular case." *Scott*, 161 P.3d at 1009 n.7. In doing so, the court recognized that its approach differed from a number of jurisdictions, including Texas. *See id.* at 1004; *see also AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. App. 2003) (holding that "there is no entitlement to proceed as a class action" and upholding arbitration agreement containing a class-action waiver). The courts that have applied Texas law to Dell contracts have compelled arbitration. *Olmstead v. Dell, Inc.*, 473 F. Supp. 2d 1018 (N.D. Cal. 2007); *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006); *Adams v. Dell Computer Corp.*, No. 06-089, 2006 WL 2670969 (S.D. Tex. Sept. 18, 2006); *Sherr v. Dell, Inc.*, No. 05-10097-GBD, 2006 WL 2109436, at * 7 (S.D.N.Y. July 27, 2006); *Falbe v. Dell, Inc.*, No. 04-1425, 2004 WL 1588243, at *4-6 (N.D. Ill. July 14, 2004); *Stenzel v. Dell, Inc.*, 870 A.2d 133, 144-45 (Me. 2005). One court, applying California law to a dispute involving a substantially smaller amount in controversy than is at issue

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 5

here, found Dell's class-action waiver to be unenforceable. *Brazil v. Dell, Inc.*, No. C-07-01700 RMW, 2007 WL 2255296 (N.D. Cal. Aug. 3, 2007).[2]

As to the second question, no one disputes that Texas, Dell's principal place of business, has a substantial relationship to Dell and the sale of the allegedly defective computers. *See Restatement* § 187(2)(a). Plaintiffs must therefore show that enforcing the class-action waiver under Texas law "would be contrary to a fundamental policy" of Washington, and that Washington "has a materially greater interest than" Texas in the determination of this issue. *Restatement* § 187(2)(b).

2. *Fundamental Public Policy*

In essence, if the Agreement is unenforceable as unconscionable, then it violates Washington's fundamental public policy. *See Scott*, 161 P.3d at 1009; *see also Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir. 2005) (applying Washington law of unconscionability to examine the enforceability of an arbitration agreement); *see also Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1068 (9th Cir. 2007) (remanding because the district court did not make a factual determination about whether the class-action waiver was unconscionable under California law before it applied the parties' choice of New York law). "Unconscionability is a doctrine under which courts may deny enforcement of all or part of an unfair or oppressive contract based on abuses during the process of forming a contract or within the actual terms of the contract itself." David K. DeWolf, et al., 25 Wash. Practice Series, *Contract Law & Practice* § 9.5 (1998 & Supp. 2006-07). Washington recognizes two categories of unconscionability, substantive and procedural. *See Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004).

---

[2]The court was careful to note that it "does not hold that a class action waiver provision such as the one at issue here (or even the identical provision in Dell's Agreement) would be considered unconscionable under other circumstances than those presented here." *Id.* at *7 n.6 (citing *Olmstead* and this court's June 18, 2007 order in *Carideo*). Like Washington, California makes a fact-based inquiry into the enforceability of a class-action waiver in an arbitration agreement. *Id.*; *see Scott*, 161 P.3d at 1004.

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 6

a. *Substantive Unconscionability*

Substantive unconscionability involves agreements in which a clause or term is alleged to be one-sided or overly harsh. *See id.* "'Shocking to the conscience, 'monstrously harsh,' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* (citation omitted). In *Scott v. Cingular Wireless*, the Washington Supreme Court set forth the framework to determine whether enforcement of a class-action waiver is substantively unconscionable.[3] The case involved a class-action waiver in an arbitration agreement between Cingular and its customers. Plaintiffs alleged that Cingular overcharged them between $1 to $45 per month. *Scott*, 161 P.3d at 1002. It was undisputed that "no individual consumer suffered a significant loss." *Id.* at 1003. Plaintiffs claimed that in the aggregate, "Cingular unilaterally overcharged the public by very large sums of money." *Id.*

The *Scott* court found the class-action waiver embedded in Cingular's arbitration agreement to be substantively unconscionable on two bases: (1) the waiver undermined the state's policy to protect consumers that is codified in Washington's Consumer Protection Act ("CPA"), *id.* at 1005; and (2) it undermined the public good by exculpating the drafter from liability for a large class of wrongful conduct, *id.* at 1006-08. The court noted that "[a] company which wrongfully extracts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation." *Id.* at 1006 (citations omitted). It quoted Judge Posner's explanation of the raison d'etre for the class action form: "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Id.* at 1007 (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

---

[3]Because the court found Cingular's class-action waiver to be substantively unconscionable, it did not reach whether it also was procedurally unconscionable. *Id.* at 1006 n.4.

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 7

The *Scott* court stressed that "class actions are vital where the damage to any individual consumer is nominal." *Id.* at 1006. "A primary function of a class-action suit "is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significan[t] size and importance if taken as a group." *Id.* at 1007 (citations omitted). The class form can be the "only meaningful type of redress for small but widespread injuries," and without it "many consumers may not realize that they have a claim." *Id.* The *Scott* court was careful to note that its holding did *not* invalidate all class-action waivers. *Id.* at 1009 n.7. "We mean to say only that class action waivers that *prevent* vindication of rights . . . are invalid. . . . [W]hether any particular class action waiver is unenforceable will turn on the facts of the particular case. We can certainly conceive of situations where a class action waiver would not prevent a consumer from vindicating his or her substantive rights . . . and would thus be enforceable." *Id.*

In the instant case, the Agreement's class-action waiver does not prevent Plaintiffs from vindicating their substantive rights. Unlike the "trivial" hidden fees of $1 to $45 at issue in *Scott*, Plaintiffs allege actual damages between $1,300 and $1,700, plus statutory and punitive damages, interest, and attorney's fees. *See* Dell's Reply in Supp. of Mot. to Compel Arbitration at 7 (Dkt. # 37). Plaintiffs purchased high-end consumer electronics under warranties with a 21-day rescission option that were rendered inoperable by an allegedly apparent defect. *See, e.g.*, *Olmstead*, 473 F. Supp. 2d at 1024-25. There is no danger that the amount in controversy is so small or the injury so insignificant that similarly situated individuals might not realize they have a claim at all. *See Scott*, 161 P.3d at 1007; *see, e.g.*, *Riensche v. Cingular Wireless LLC*, No. C06-1325Z, 2006 WL 3827477 at *11 (W.D. Wash. Dec. 27, 2006) (applying Washington law to find unconscionable a class-action waiver where claim involved a tax on cell phone usage);

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 8

*Lowden v. T-Mobile*, No. C05-1482P, 2006 WL 1009279 at \*3 (W.D. Wash. April 13, 2006) (same where claim involved a service fee for cell phone usage).

Plaintiffs argue that while individual amounts in controversy of $1,300 to $1,700 are not insignificant, a class-action remedy remains necessary because many consumers would not view that amount as sufficient to warrant individual litigation, and certainly not sufficient to obtain legal assistance in prosecuting the claim. *See, e.g.*, *Oestreicher v. Alienware Corp.*, No. C07-512 MHP, 2007 WL 2302492, at \*5 (N.D. Cal. Aug. 10, 2007); *Cohen v. DirecTV, Inc.*, 48 Cal. Rptr. 3d 813, 820 (Cal. Ct. App. 2006) (holding that "[d]amages that may or may not exceed $1,000 do not take DirecTV's class action waiver outside 'a setting in which disputes between the contracting parties predictably involve small amounts of damages'") (quoting *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005)). According to Plaintiffs, the court should analyze the costs and benefits for an individual who is litigating a complex computer defect case. For example, an individual litigant would be unlikely to spend $56,700 for an expert opinion on a $2,000 claim. Pls.' Opp'n to Mot. to Compel Arbitration at 6 (Dkt. # 30); Selbin Decl. ¶ 18 (Dkt. # 33) (referring to expert opinion for a nationwide class-action lawsuit that settled during arbitration).

The court agrees that *Scott* requires it to weigh the costs and benefits of proceeding individually, i.e., whether the Agreement's class-action waiver "exculpates [Dell] from legal liability for any wrong where the cost of pursuit outweighs the potential amount of recovery." *Scott*, 161 F.3d at 1007. The court declines, however, to disregard the amount of controversy in favor of speculative claims about how much an individual might spend if cost were no object. Ms. Carideo and Ms. Candler contend that their computers do not function properly and may be defective. As Dell noted in its oral argument, a claimant might cost-effectively print out the many complaints about a particular model posted on Dell's online community forum and submit those as proof of

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 9

the defect to the decision-maker. *See* http://www.dellcommunity.com/supportforums/ (last visited October 12, 2007). The NAF rules provide that orders and awards are *not* confidential and may be disclosed by any party. National Arbitration Forum, *Code of Procedure* (Aug. 1, 2007), Rule 4 ("*NAF Code*"). An enterprising attorney could thus use prior, successful arbitration awards when bringing new claims that require identical presentations of proof, as well as make known to potential clients her many victories.[4]

Plaintiffs argue that the Agreement is invalid because the costs of arbitrating their claims individually are prohibitively expensive. "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Adler*, 103 P.3d at 785 (quoting *Green Tree Fin. Corp.*, 531 U.S. at 92). The Agreement requires Dell to pay those hearing fees exceeding the cost of filing in state court, which in Seattle means a cap of $200. Dell's Reply in Support of Mot. to Compel at 10 n.12 (citing fees under RCW § 36.18.020); Pape Decl., Ex. B ¶ 13. Furthermore, as reiterated in oral argument, Dell has agreed to pay any of Plaintiffs' arbitration fees that exceed the initial $25 filing fee. *See* Dell's Reply in Support of Mot. to Compel at 10 n.13. Dell's willingness to pay nearly all of Plaintiffs' fees and costs offsets any evidence that Plaintiffs have provided about the high costs of arbitration before the NAF, which even capped at $200 would not prohibit Plaintiffs from bringing their claims. *See, e.g.*, *Zuver*, 103 P.3d at 763 (holding defendant's offer to pay the plaintiff's arbitration fees rendered her claim of unconscionable fees moot); *Lowden*, 2006 WL 1009279, at *9 ("Defendent . . . has stated its willingness to pay all fees and costs, which offsets any evidence that

---

[4] In 2005, there were 28,000 small-claims filings (those seeking $4,000 or less) in Washington alone. Tilden Decl., Ex. A at 10 (Dkt. # 39) (excerpts from Courts of Limited Jurisdiction 2005 Annual Caseload Report). While there would be few incentives for an attorney to represent such disparate claims, one who represented the same kind of claim with the same kind of proof—as is the case with the Dell computer disputes—could develop the expertise and administrative efficiency to make such a practice profitable.

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 10

Plaintiffs could provide" about whether arbitration costs were prohibitive) (citation omitted).

Plaintiffs also argue that the court should follow the holding in *Oestreicher*. In that case, the Northern District of California rejected the proposition that a claim exceeding $1,000 *necessarily* fell outside of the framework set forth in *Discover Bank* for determining whether a class-action waiver was substantively unconscionable. *See Oestreicher*, 2007 WL 2302490, at *5. The court then concluded that a claim for a $4,149 computer constituted precisely the kind of "small" amount of individual damages meant to be protected by a class-action lawsuit. *See id.* It did not, however, examine whether the costs of pursuing individual claims outweighed the possible benefits. The court thus elided a discussion of *why*, under the circumstances presented, an individual with a seemingly substantial claim would deem the pursuit of it to be futile.[5]

This court declines to presume that individual claims of $1,300 to $1,700 are insignificant vis-a-vis the possible costs. Plaintiffs' own expert, the same successful consumer attorney relied upon by the plaintiffs in *Scott*, opined that he will generally turn away individual claims for less than $5,000. Maier Decl. ¶ 12 (Dkt. # 48). This makes sense when applied to the *Scott* plaintiffs, where it could have taken 5000 Cingular customers each collecting $1 to reach his threshold for proceeding. *See Scott*, 161 P.3d at 1007 ("While technically the plaintiffs are not prevented from hiring an attorney, practically, attorneys are generally unwilling to take on individual arbitrations to recover *trivial* amounts of money.") (emphasis added). Ms. Carideo's and Ms. Candler's claims already total $3,000, and they own just two of the four computer models alleged to be

---

[5]In contrast, the court in *Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166, 1179, 1182 (W.D. Wash. 2002), invalidated a class-action waiver because, among other reasons, the plaintiffs were "financially strapped," the arbitration fees were "likely to drastically exceed the costs of pursuing the claims in court," and "an individual consumer has so little at stake that she is unlikely to pursue her claim."

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 11

defective. *See* Am. Compl. ¶ 1.1 (Dkt. # 10). Plaintiffs' expert would need to attract no more than *four* clients, all of whom would hand over similar broken computers, to exceed his $5,000 threshold.[6] A less-established attorney likely could represent such claimants at a lower dollar-amount threshold given the nearly identical showings that would need to be made and the ease with which he or she could attract new clients with successful outcomes.

Plaintiffs have not met their burden of showing that, given the totality of the circumstances, the Agreement's class-action waiver would prevent the vindication of their substantive rights. *See Scott*, 161 P.3d at 1009 n.7; *Luna*, 236 F. Supp. 2d at 1183. The court therefore cannot invalidate as substantively unconscionable and a violation of Washington's fundamental public policy the Agreement's choice of Texas law.

        b.      *Procedural Unconscionability*

"Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." *Zuver*, 103 P.3d at 759 (citations omitted). Although substantive unconscionability alone can support a finding of unconscionability, it is an open question whether procedural unconscionability alone would have the same effect. *See Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004); *Zuver*, 103 P.3d at 760 n.4.

---

[6] The *Scott* court noted its concern that Cingular customers would be awarded attorney's fees only if they recovered the full amount of their demands. *Scott*, 161 P.3d at 1007. That is, a claimant could recover 99 percent of a tiny sum and still not be awarded any attorney's fees. *Id.* Should Plaintiffs succeed on their statutory claims in arbitration, they would face no such limitations on attorney's fees. *See* Pape Decl., Ex. B ¶ 13; *NAF Code*, Rule 37(c); *see also Gilmer*, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.").

ORDER DENYING PLAINTIFFS' RULE 60(b) MOTION – 12

Neither party disputes that the Dell Agreement was a contract of adhesion, but this fact does not, by itself, render it procedurally unconscionable. *See Zuver*, 103 P.3d at 760. Plaintiffs had a reasonable opportunity to understand the Agreement, as they were informed of it on several occasions and also had three to four weeks after receiving their computers to review and reject the Agreement by returning their computers. The arbitration clause was not hidden in a maze of fine print, but was presented in all capital letters in the four-page agreement. Agreement ¶ 13. Considering all of these factors, the court declines to find the Agreement to be procedurally unconscionable.[7]

### III. CONCLUSION

For the reasons stated, the court DENIES Plaintiffs' Federal Rule of Civil Procedure 60(b) motion for relief from the court's order compelling arbitration (Dkt. # 43).

Dated this 15th day of October, 2007.

JAMES L. ROBART
United States District Judge

---

[7] Because the court finds that Texas law enforcing the Agreement's class-action waiver is not, under these circumstances, contrary to Washington's fundamental public policy, it need not examine whether Washington has a materially greater interest than Texas in resolving the dispute. *See Erwin*, 2007 WL 2729036, at *8; *Restatement* § 187(2)(b). Similarly, the court also does not examine whether it could sever an unconscionable class-action waiver and enforce class arbitration. *See Discover Bank*, 113 P.3d at 1116-17 (discussing the advantages of enforcing class arbitration when a class-action waiver is unenforceable); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, __ F.3d __, 2007 WL 2332068, at *12-15 (9th Cir. 2007) (discussing why the Federal Arbitration Act does not preempt the invalidation of a class-action waiver and the enforcement of class arbitration). The court notes, however, that Plaintiffs have submitted inconsistent positions on this issue. In their papers, they argued that the class-action waiver was so integral to the Agreement that it could not be severed. Pls.' Opp'n to Mot. to Compel Arbitration at 24. At oral argument, they stated that they would welcome class arbitration, but the NAF Code prohibits it. This second statement is incorrect: the NAF Code appears to permit class arbitration "as required by applicable law." NAF Code, Rule 19.A; *see* Pape Decl., Ex. H, Rule 19.A (National Arbitration Forum, *Code of Procedure* (May 1, 2006)) (same).