UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTIN CARIDEO, et al., | CASE NO. C06-1772JLR |
| Plaintiffs, | ORDER |
| v. | |
| DELL, INC., | |
| Defendant. | |

The class action waiver is now a familiar provision in consumer purchase agreements nationwide. Under Washington law, a class action waiver may be deemed unenforceable on grounds of substantive unconscionability in limited circumstances based on the facts of a particular case. This case returns on remand from the United States Court of Appeals for the Ninth Circuit for the court to determine whether the case presents one such instance of unconscionability.

Specifically, in light of the Washington Supreme Court's decision in *McKee v. AT & T Corp.*, 191 P.3d 845 (Wash. 2008), the Ninth Circuit directs the court to

reconsider its order denying Plaintiffs' original Federal Rule of Civil Procedure 60(b) motion for relief from this court's order compelling arbitration. *See In re Carideo*, 550 F.3d 846 (9th Cir. 2008). Having reviewed Plaintiffs' supplemental Rule 60(b) motion (Dkt. # 71), all papers filed in support of and opposition to the motion, as well as Plaintiffs' original Rule 60(b) motion (Dkt. # 43), Defendant Dell, Inc.'s ("Dell") motion to compel arbitration (Dkt. # 14), various supplemental filings, and the balance of the record, and having heard the argument of counsel, the court GRANTS Plaintiffs' supplemental Rule 60(b) motion (Dkt. # 71).

## I. BACKGROUND

The parties are familiar with the facts and procedural posture of this case. Plaintiffs Kristin Carideo and Catherine Candler purchased allegedly defective laptop computers from Dell at prices of approximately $1,300 and $1,700, respectively. (Declaration of Kristin Carideo (Dkt. # 31) ¶ 4; Declaration of Catherine Candler (Dkt. # 32) ¶ 5.) As putative class representatives, they allege violations of Washington's Consumer Protection Act ("CPA"), breach of express and implied warranties, fraudulent concealment, and unjust enrichment. (Am. Compl. (Dkt. # 10) ¶¶ 8.1-12.5.)

Dell moved to compel arbitration based on an arbitration clause in the "Terms and Conditions of Sale" ("Agreement") that it presents to customers at the time of purchase, and again with the shipment of the computer. (Declaration of Mary Pape

("Pape Decl.") (Dkt. # 15) ¶¶ 5, 6, Exs. A & B.)[1] The arbitration clause provides that any claims related to the Agreement shall be resolved by binding arbitration administered by the National Arbitration Forum ("NAF").[2] The arbitration clause

---

[1] Dell provided two versions of the Agreement. (*See* Pape Decl., Exs. A & B.) The parties agree that Exhibit A is the version of the Agreement that governs Ms. Carideo's purchase while Exhibit B is the version of the Agreement that governs Ms. Candler's purchase. (Pape Decl. ¶ 4; Pls. Resp. to Mot. to Compel Arb. (Dkt. # 30) at 3.) The two versions of the Agreement are substantively similar, but include some different terms. Unless otherwise noted, the court refers to the Agreement as it appears in Exhibit A to Ms. Pape's declaration.

[2] Paragraph 13 of the Agreement applicable to Ms. Carideo, titled "Binding Arbitration," provides:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph ("Dell"), arising from or relating to this Agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at www.arb-forum.com or via telephone at 1-800-474-2371). The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF or at P.O. Box 50191, Minneapolis, MN 55405.

(Pape Decl., Ex. A ¶ 13.) Paragraph 13 of the Agreement applicable to Ms. Candler, titled "Binding Arbitration" provides:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) BETWEEN

includes a class action waiver pursuant to which the customer waives her ability to pursue a class action against Dell and vice versa. (Pape Decl., Ex. A, ¶ 13.) The Agreement selects the substantive law of Texas to govern contract disputes. (*Id.* ¶ 2.)

In June 2007, the enforceability of the Agreement was presented to the court through a choice-of-law question: whether the Agreement's class action waiver violated Washington's fundamental public policy such that the parties' express choice

---

> CUSTOMER AND DELL, its agents, employees, principals, successors, assigns, affiliates (collectively for purposes of this paragraph, "Dell") arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at http://www.arb-forum.com, or via telephone at 1-800-474-2371). The arbitration will be limited solely to the dispute or controversy between customer and Dell. NEITHER CUSTOMER NOR DELL SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER CUSTOMERS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR CLASS ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. This transaction involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction. Dell will be responsible for paying any arbitration filing fees and fees required to obtain a hearing to the extent such fees exceed the amount of the filing fee for initiating a claim in the court of general jurisdiction in the state in which you reside. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim that affords the prevailing party attorneys' fees or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party, under the standards for fee shifting provided by law. Information may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55405.

(Pape Decl., Ex. B ¶ 13.)

of Texas law could not be honored. *See Carideo v. Dell, Inc.* ("*Carideo I*"), 492 F. Supp. 2d 1283, 1288 (W.D. Wash. 2007). The court noted that "[a]bsent a legislative enactment or declaration from the highest court that class action waivers of the sort presented here violate public policy of the State of Washington, the court declines to invalidate the Agreement's choice of law provision." *Id.* The court therefore applied Texas law, stayed this action, and compelled arbitration. *Id.*

After June 2007, developments in Washington law led the court to revisit its analysis on Plaintiffs' motion for relief under Federal Rule of Civil Procedure 60(b). First, in *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006-08 (Wash. 2007), the Washington Supreme Court held that the class action waiver contained in Cingular Wireless's ("Cingular") consumer arbitration agreement violated the public policy embodied in Washington's CPA and improperly exculpated Cingular from wrongful conduct. Second, in *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1121 (Wash. 2007), the Washington Supreme Court clarified that it would apply section 187 of the *Restatement (Second) Conflict of Laws* (1971) to conflict of laws problems in which the parties have made an express contractual choice of law. Third, a number of other courts had weighed-in on the issue of class action waivers in arbitration agreements.

In September 2007, the court heard oral argument on Plaintiffs' original Rule 60(b) motion. Plaintiffs argued that *Scott* stands for the proposition that a class action waiver of the type found in the Agreement is unconscionable and, therefore, unenforceable as a violation of Washington's fundamental public policy. The court

disagreed. Although it concluded that *Scott* directs courts to examine the enforceability of class action waivers based on the totality of the circumstances, the court ultimately found that the Agreement was enforceable because it was neither substantively nor procedurally unconscionable. *See Carideo v. Dell, Inc.* ("*Carideo II*"), 520 F. Supp. 2d 1241, 1249 (W.D. Wash. 2007).

Plaintiffs petitioned the Ninth Circuit for a writ of mandamus. While the petition remained pending, the Washington Supreme Court issued its decision in *McKee v. AT & T Corp.*, 191 P.3d 845 (Wash. 2008), in which the court, applying *Scott*, held that the class action waiver contained in an agreement for AT & T telephone services was substantively unconscionable. 191 P.3d at 857-58. The Ninth Circuit subsequently denied Plaintiffs' petition for writ of mandamus without prejudice and ordered as follows: "In light of the intervening authority of *McKee v. AT & T Corp.*, 191 P.3d 845 (Wash. 2008), this case is remanded to the district court to reconsider its order denying Petitioners' Rule 60(b) motion for relief from its order compelling arbitration." *In re Carideo*, 550 F.3d at 846. The Ninth Circuit did not rule on the merits of *Carideo II*.

Plaintiffs filed a supplemental Rule 60(b) motion, which comes before this court not only in the wake of *McKee* but also in the current of steady developments in the case law. First, a range of courts, applying Washington law, have now addressed the issue of class action waivers, thereby applying *Scott* to a somewhat more factually-diverse group of cases. *See, e.g., Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217-19 (9th Cir. 2008) (holding class action waiver substantively unconscionable under

*Scott* in case involving improper telephone service charges); *Coneff v. AT & T Corp.*, 620 F. Supp. 2d 1248, 1256-60 (W.D. Wash. 2009) (holding class action waiver substantively unconscionable under *Scott* in case of telephone service fees involving claims ranging from $4.99 to $175); *Olson v. The Bon, Inc.*, 183 P.3d 359, 364-65 (Wash. Ct. App. 2008) (holding class action waiver substantively unconscionable under *Scott* in case of credit protection program involving claims of "less than a couple of hundred dollars"). Second, in *Oestreicher v. Alienware Corp.*, 322 F. App'x. 489, 492 (9th Cir. 2009) (unpublished), the Ninth Circuit, applying California law, concluded that a claim for $4,000 constituted a small amount in the context of a dispute involving defective notebook computers and thus that the class action waiver contained in the purchase agreement was substantively unconscionable. Third, in *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094-97 (9th Cir. 2009), the Ninth Circuit, applying Oregon law, held that a class action waiver was substantively unconscionable in a case involving claims of $696.63.

After oral argument, this case took an unexpected turn when news broke that NAF had ceased arbitrating consumer disputes of the sort at issue here. (*See* Dkt. ## 78-80.) The court need not explore the reasons motivating NAF's decision for present purposes. In any event, having reviewed the parties' supplemental briefing on this development, it is clear that NAF does not arbitrate consumer disputes filed after July 24, 2009, and the parties agree that NAF is no longer available to arbitrate this dispute. The parties disagree, however, as to the effect of this development on the arbitration

clause in the Agreement. Dell argues that the court should merely appoint a substitute arbitrator. (Def. Supp. (Dkt. # 85) at 5-6.) By contrast, Plaintiffs argue that the court should deny arbitration on this ground. (Pl. Supp. (Dkt. # 83) at 5-6.)

## II. ANALYSIS

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see Preston v. Ferrer*, __ U.S. __, 128 S. Ct. 978, 981 (2008). To that end, the FAA divests the district court of its discretion and requires it to resolve any doubts in favor of compelling arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### B. Unavailability of Chosen Arbitrator

The court must first determine whether the unavailability of NAF as arbitrator dooms the arbitration clause in its entirety, including the class action waiver. Under the FAA, the answer to this question turns on whether the selection of NAF as arbitrator is integral to the Agreement. *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir.

2006). In general, the FAA provides that where the chosen arbitrator is unavailable, the court may appoint a substitute arbitrator. Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. The parties agree that § 5 of the FAA and the Ninth Circuit's decision in *Reddam* provide the appropriate lens through which to view the problem raised by the recent unavailability of NAF.

To determine whether to appoint a substitute arbitrator, the court must ask whether the choice of the specific arbitrator is integral to the arbitration agreement. In essence, "[w]hen a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act." *Reddam*, 457 F.3d at 1060. "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).

The Ninth Circuit has had few opportunities to address the language of particular arbitration clauses. In *Reddam*, however, the Ninth Circuit set forth guidelines for the

district courts to apply in evaluating arbitration clauses. 457 F.3d at 1059-61. Where the arbitration clause selects merely the rules of a specific arbitral forum, as opposed to the forum itself, and another arbitral forum could apply those rules, the unavailability of the implicitly intended arbitral forum will not require the court to condemn the arbitration clause. *Id.* At a minimum, for the selection of an arbitrator to be deemed integral, the arbitration clause must include an "express statement" designating a specific arbitrator. *Id.* at 1060. The *Reddam* court noted that the Ninth Circuit had not treated the selection of a specific litigation forum as exclusive of all other fora, "unless the parties have expressly stated that it was," citing *Pelleport Investors, Inc. v. Budco Quality Theaters, Inc.*, 741 F.2d 273 (9th Cir. 1984) (agreement provided that "disputes . . . shall be litigated only in the Superior Court for Los Angeles, California (and in no other)"), as an example. *Reddam*, 457 F.3d at 1061.

Here, the court concludes that the parties' selection of NAF as arbitrator is integral to the arbitration clause. The arbitration clause provides that disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBIRATION FORUM (NAF) under its Code of Procedure then in effect . . . ." (Pape Decl., Ex. A ¶ 13 & Ex. B ¶ 13.) This language clearly and unequivocally selects NAF as the arbitrator, specifies that NAF will apply its own rules in the arbitration, and does not provide for an alternative arbitral forum. Unlike *Reddam*, the selection of NAF is not merely an implicit choice, but rather an express one. Furthermore, the arbitration clause states that binding

arbitration administered by NAF under its rules is the exclusive and final method for resolving disputes. The court is not persuaded by Dell's arguments that the term "exclusively" modifies only "binding arbitration" or that the language is either ambiguous or nonsensical. All of these considerations emphasize the key role of NAF and lead the court to find its selection integral to the arbitration clause.

The Appellate Court of Illinois reached a similar conclusion in *Carr v. Gateway, Inc.*, No. 5-07-0711 (Ill. App. Ct. Oct. 16, 2009). In that case, the Illinois court concluded that the selection of NAF was integral to the arbitration clause at issue and thus held that § 5 of the FAA could not be used to appoint a substitute arbitrator. *Carr*, slip op. at 6-8. The arbitration clause at issue in *Carr* provided, *inter alia*, that disputes "will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules . . . ." *Id*. at 6. The court interpreted this language as specifically designating NAF "as the exclusive arbitration forum," and emphasized the substantive effects of such a designation:

> The NAF has a very specific set of rules and procedures that has implication for every aspect of the arbitration process. "[T]he designation of a [specific arbitral] forum such as the [NAF] 'has wide-ranging substantive implication that may affect, inter alia, the arbitrator-selection process, the law, procedures, and rules that govern the arbitration, the enforcement of the arbitral award, and the cost of the arbitration.'"

*Id.* at 7-8 (quoting *Grant v. Magnolia Manor-Greenwood, Inc.*, 383 S.C. 125, 132 (S.C. 2009) (quoting *Singleton v. Grade A Market, Inc.*, 607 F. Supp. 2d 333, 340 (D. Conn. 2009))). With these considerations in mind, the Illinois court held that "the selection of

the NAF is neither logistical nor ancillary and is thus an integral part of the agreement to arbitrate . . . ." *Id.* at 8. The court finds the analysis of *Carr* persuasive. There is no meaningful difference between the arbitration clause in *Carr* and the one at issue here, and the court agrees that the parties' selection of NAF and its rules brings with it substantive implications that are neither merely logistical nor ancillary.

Finally, the court is mindful that the arbitration clause not only selects NAF as arbitrator, but designates NAF's code of procedure as the applicable rules. This both underscores NAF's importance to the arbitration clause and raises concerns regarding whether any NAF rules remain "in effect" that could be applied by a substitute arbitrator. Dell notes that while NAF stopped accepting new consumer arbitrations after July 24, 2009, it continues to arbitrate previously-filed matters under its rules. (Def. Supp. at 6.) Dell argues that, as a consequence, NAF rules are in effect and may be applied by a substitute arbitrator. (*Id*.) The court disagrees. While NAF may continue to apply certain rules to previously-filed consumer arbitrations, it does not follow that these rules remain "in effect" for arbitrations filed after July 24, 2009. Rather, because NAF does not arbitrate consumer disputes filed after July 24, 2009, there are simply no NAF rules currently in effect for such arbitrations. Therefore, even were the court to appoint a substitute arbitrator, the court is not persuaded that there would be applicable NAF rules "in effect" for the substitute arbitrator to apply.

In sum, the court concludes that the selection of NAF is integral to the arbitration clause. The unavailability of NAF as arbitrator presents compounding

problems that threaten to eviscerate the core of the parties' agreement.  To appoint a substitute arbitrator would constitute a wholesale revision of the arbitration clause.  In addition, this type of substitution would pose additional problems on the facts of this case because putative class members would have no knowledge that potential claims would be arbitrated by a substitute arbitrator.  Like the Appellate Court of Illinois in *Carr*, the court finds that the selection of NAF is neither logistical nor ancillary to the arbitration clause.  The court therefore declines to appoint a substitute arbitrator pursuant to § 5 of the FAA.

The court next must determine whether the class action waiver survives the failure of the arbitration clause.  By its plain language, the class action waiver applies only in the context of arbitration.  Although the language differs between the two versions of the Agreement, both directly link the class action waiver to arbitration and to the arbitration clause.  Further, neither version of the Agreement includes a severability provision.  The parties have previously agreed that if the court found the class action waiver unenforceable, the court should not enforce arbitration.  By a similar token, the court concludes that the class action waiver cannot be severed from or lifted out of the arbitration clause because it is inextricably tied to arbitration.  Therefore, because the class action waiver is not severable, the court concludes that the class action waiver, like the arbitration clause, is not enforceable.[3]

---

[3] The court recognizes that this order does not address *McKee* or Plaintiffs' primary argument that the class action waiver is substantively unconscionable under Washington law.

Having concluded that the arbitration clause and the class action waiver are unenforceable, the court grants Plaintiffs' supplemental Rule 60(b) motion and vacates the order compelling arbitration because arbitration is no longer possible.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' supplemental Rule 60(b) motion (Dkt. # 71). Plaintiffs are hereby relieved from the order compelling arbitration (Dkt. # 42) and the order denying Plaintiffs' original Rule 60(b) motion (Dkt. # 57). Dell shall file its answer to Plaintiffs' first amended complaint (Dkt. # 10) within 30 days of the date of entry of this order.

Dated this 26th day of October, 2009.

JAMES L. ROBART
United States District Judge

---

Although the court has considered *McKee* and other case law in depth, the court declines to address the issue of unconscionability where the matter is appropriately resolved on a threshold issue.